# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

IN RE:  THE 53 FOOT TRAWLER
PEGASUS, HER ENGINES, TACKLE,
APPAREL, ETC.,

                     In Rem,

STEPHEN WOYNAR,

                     Petitioner,

-vs-                                       6:08-cv-117-Orl-18DAB

VERNON J. SMITH,
MARION SMITH,

                     Respondents.

_____

## ORDER

       This cause came on for consideration without oral argument on the following motions filed

herein:

| | |
|---|---|
| **MOTION:** | **PETITIONER WOYNAR'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 82)** |
| **FILED:** | **September 23, 2008** |
| **THEREON** it is **ORDERED** that the motion is **DENIED.** | |
| **MOTION:** | **VERNON J. SMITH AND MARION E. SMITH'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 85)** |
| **FILED:** | **September 26, 2008** |
| **THEREON** it is **ORDERED** that the motion is **DENIED.** | |

       Petitioner Steven G. Woynar filed this admiralty action *in rem* to determine the right to

possession of Defendant Vessel (the "Pegasus").  Doc. No. 1.  Intervening Plaintiffs Vernon J. Smith

and Marion E. Smith filed suit to foreclose a preferred ship mortgage on the Pegasus; Woynar, as a

Counter-Plaintiff, seeks damages in an *in personam* action against the Smiths arising out of a self-help repossession of the Pegasus. Intervenor Lee Wheelbarger has filed a claim to certain "equipment and personal belongings" on board the Pegasus, for which he claims ownership and the right to remove, which is opposed by the Smiths who dispute his right to remove items which are subject to the terms of the Preferred Ship Mortgage. Woynar and the Smiths have filed cross-motions for summary judgment, which each side has respectively opposed.

## I. Procedural History

On January 24, 2008, Woynar filed a Possessory and Petitory action pursuant to Rule D of the Supplemental Rules for Admiralty and Maritime Claims, to try title to the Pegasus, and to establish his right to possession of the Vessel; Woynar also sought a warrant of arrest for the Vessel and appointment of a substitute custodian. Doc. Nos. 1, 2, 3. This Court granted the motions and appointed a custodian and issued the warrant the following day; a status hearing with notice to other claimants was set for January 30, 2008. Doc. Nos. 7, 8, 12. The Vessel was arrested on January 26, 2008. Doc. No. 21.

On January 28, 2008, the Smiths filed their claim to the Vessel and an Intervenor's Complaint *in rem* to foreclose their Preferred Ship Mortgage or preferred mortgage lien in default on the Defendant Vessel Pegasus pursuant to 46 U.S.C. § 31325 and to establish priority of claims as authorized by 46 U.S.C. § 31326. Doc. Nos. 14, 18. A supplemental warrant for arrest of the Vessel was issued on January 31, 2008. Doc. No. 24. On February 27, 2008, the Court entered an Order requiring Woynar to post security of $105,000 in order to obtain release of the Vessel. Doc. No. 35. Woynar has not posted the security. On March 4, 2008, Lee Wheelbarger filed his Verified Intervenor's Complaint against the Smiths seeking to recover from the Vessel "very expensive and

delicate equipment" and personal belongings on board the Pegasus at the time it was repossessed by the Smiths' agent.

On September 23, 2008, Woynar filed his Motion for Summary Judgment on his claims for conversion, wrongful repossession, and negligence. Doc. No. 82. On September 26, 2008, the Smiths filed their Motion for Summary Judgment on their Intervening Complaint (Doc. No. 18) against the Defendant Vessel[1] *in rem*, requesting foreclosure of Plaintiffs' First Preferred Ship Mortgage, and seeking a declaration that their claims are superior to the claims and interests of anyone to the Vessel, including Woynar. The parties have responded to the respective motions and the motions are ripe for consideration.

## II. Background Facts[2]

In July 2004, Woynar contracted to purchase the Pegasus[3] from the Smiths for $75,000. Doc. No. 95. Woynar paid a portion of the purchase price through credit for work performed at Smith's house and paid a portion by cashier's check. *Id*. On September 4, 2004, Woynar signed a "Note" to Smith for $43,000. *Id*. On November 13, 2004, Woynar signed a Preferred Ship Mortgage to the Smiths for $43,000 and the Smiths executed a Bill of Sale to Woynar. *Id*. Article II of the Preferred Ship Mortgage entitled – Default ¶ 1(a)(c) thereof provided authority for the self-help repossession

---

[1] The Smiths allege the Vessel includes her masts, boilers, cables, engines, machinery, bowsprits, sails, rigging, boats, anchors, chains, tackle, apparel, furniture, fittings, tools, pumps, equipment and supplies, and all fishing and other appurtenances and accessories and additions, improvements and replacements now or hereafter belonging thereto, whether or not removed therefrom.

[2] The Background Facts are either undisputed (as contained in the Admitted Facts section of the parties' Pretrial Statement-Doc. No. 95) or read in the light most favorable to the nonmoving party, as they must be on summary judgment. *See Davis v. Williams,* 451 F.3d 759, 763 (11th Cir. 2006) ("Courts must construe the facts and draw all inferences in the light most favorable to the nonmoving party . . . [e]ven though the facts accepted at the summary judgment stage of the proceedings may not be the actual facts of the case.").

[3] The N/V Pegasus is a 53 ft. U.S. flag vessel bearing Official No. 998417.

of the vessel in the event of default according to the specific wording thereof. *Id*. Both documents were duly recorded with the U.S. Coast Guard. *Id*.

For a period of time after December 1, 2004, the Pegasus was in Connecticut. *Id*. The Pegasus returned to the Daytona Beach, Florida area on or about December 8, 2007 and was docked at Loggerhead Marina, also known as Caribbean Jacks on January 17, 2008. *Id*. As of January 17, 2008, Woynar was still the documented owner of the Pegasus and the Smiths were still the holders of the Preferred Ship Mortgage. *Id*. Woynar and his fiancee, Anna Sapia, lived aboard the vessel although this was not known to the Smiths. *Id*.

At approximately 11:29 p.m. on January 17, 2008, Ashley Hull, accompanied by Officer Thomas Alfano of the Daytona Beach Police Department, approached the Vessel and advised Woynar the Vessel was being repossessed on behalf of Smith. *Id*. At eight minutes after midnight, the K-9 Unit was called in and the Vessel was searched, and marijuana was detected. Doc. No. 80, Chirco Dep. at 10, 17, 44 & Ex. A at 2; Doc. No. 79, Alfano Dep. at 26-27. Woynar was detained in handcuffs and asked to sit on the ground. Alfano Dep. at 28. No charges were brought. Doc. No. 80, Chirco Dep. at 10, 17, 44.

Ashley Hull does not hold a recovery agent's "R" licence issued by the State of Florida. Doc. No. 95. Anna Sapia was not on the Vessel when it was approached by Hull; she was later issued a "trespass notice" by Officer Fields. *Id*. The Smiths (through Hull) thereafter had possession of the Vessel from January 17 to 26, 2008. Hull was paid $1,000 by Smith for repossessing the Vessel. *Id*. On January 26, 2008, the Vessel was taken from Hull at Mathews Marina in Daytona Beach by the U.S. Marshal pursuant to a warrant of arrest issued by this Court. *Id*. It has since been in the hands of substitute custodians. *Id*.

Lee Wheelbarger was an investor in the Vessel who purchased equipment that was placed aboard the Vessel prior to its repossession. *Id*. Both Woynar and Wheelbarger have previously removed some items from the Vessel by consent of the parties. *Id*.

### IV.  Motions for Summary Judgment

**A. Standard**

A party is entitled to summary judgment when the party can show that there is no genuine issue as to any material fact. FED. R. CIV. P. 56(c); *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458 (11th Cir. 1994). Which facts are material depends on the substantive law applicable to the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The moving party bears the burden of showing that no genuine issue of material fact exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Watson v. Adecco Employment Svc., Inc.*, 252 F. Supp. 2d 1347, 1352 (M.D. Fla. 2003).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986) (internal quotations and citation omitted). Thereafter, summary judgment is mandated against the non-moving party who fails to make a showing sufficient to establish a genuine issue of fact for trial. *Id*. at 322, 324-25; *Watson*, 252 F. Supp. 2d at 1352. The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts. *Evers v. Gen. Motors Corp*., 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific supporting facts have no probative value").

"Courts must construe the facts and draw all inferences in the light most favorable to the nonmoving party . . . [e]ven though the facts accepted at the summary judgment stage of the proceedings may not be the actual facts of the case." *Davis v. Williams,* 451 F.3d 759, 763 (11th Cir. 2006) (internal citations and quotations omitted). The Court is not, however, required to accept all of the nonmovant's factual characterizations and legal arguments. *Beal*, 20 F.3d at 458-59. If material issues of fact exist, the Court must not decide them, but rather, must deny the motion and proceed to trial. *Herzog v. Castle Rock Entertainment,* 193 F.3d 1241, 1246 (11th Cir. 1999).

The Rule 56 standard is not affected by the filing of cross motions for summary judgment: "The court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2720 at 335-36 (3d ed.1998). Cross-motions may, however, be probative of the absence of a factual dispute where they reflect general agreement by the parties as to the controlling legal theories and material facts. *See United States v. Oakley,* 744 F.2d 1553, 1555 (11th Cir. 1984).

### B. Analysis

*Woynar's Motion for Summary Judgment on Wrongful Self-Help Repossession*

Woynar moves for summary judgment on his claims for conversion, wrongful repossession, and negligence. Doc. No. 82. He contends that regardless of the status (of any default) in his mortgage payments, the self-help repossession by Ashley Hull, the Smith's agent, on January 17, 2008, was contrary to Florida law and resulted in damages to Woynar, the Vessel, and its contents. Doc. No. 82. The Smiths argue that extensive disputed facts preclude the relief requested by Woynar.

The Preferred Ship Mortgage signed by Woynar permitted self-help repossession. Parties to a ship mortgage can contract that self-help repossession under state law be available to enforce a

mortgage. *Dietrich v. Key Bank*, 72 F.3d 1509 (11th Cir. 1996) (Ship Mortgage Act did not prohibit holder of preferred ship mortgage from using state law self-help repossession remedies following mortgagor's default where parties authorized those procedures in underlying mortgage contract). The parties agree that Florida Statutes § 679.609(2)(b), setting forth the guidelines for "self-help" (*i. e.,* without judicial process) repossessions of collateral, applies in this case. Under Florida law, self-help repossession can only proceed without breach of the peace. Fla. Stat. § 679.609(2)(b).

Woynar contends he is entitled to summary judgment, arguing that it is was a breach of the peace as a matter of law for Hull to involve the police in the repossession. Doc. No. 82. The Smiths contend that the issue of "breach of the peace" is a fact intensive inquiry and there was no breach of the peace because Woynar consented to their entry and his only "objection" was to "inquire if he could make a payment, and when that was declined he proceeded with packing his belongings to vacate the boat." Doc. No. 94.

Section 679.609 does not specifically define a "breach of the peace"; however, the Uniform Commercial Code Comment following the section states:

> [T]his section does not define or explain the conduct that will constitute a breach of the peace, leaving that matter for continuing development by the courts. In considering whether a secured party has engaged in a breach of the peace, however, courts should hold the secured party responsible for the actions of others taken on the secured party's behalf, including independent contractors engaged by the secured party to take possession of collateral.

> This section does not authorize a secured party who repossesses without judicial process to utilize the assistance of a law-enforcement officer. A number of cases have held that a repossessing secured party's use of a law-enforcement officer without benefit of judicial process constituted a failure to comply with former Section 9-503.

Fla. Stat. § 679.609.  The test to determine whether a breach of the peace has occurred is whether there was entry by the creditor[4] upon the debtor's premises; and whether the debtor or one acting on his behalf consented to the entry and possession. *Northside Motors of Florida, Inc. v. Brinkley*, 282 So.2d 617, 624 (Fla. 1973); *Quest v. Barnett Bank of Pensacola*, 397 So.2d 1020, 1023 (Fla. 1st DCA 1981). Consent must be freely given to enter the property of a debtor in order to repossess; the debtor may revoke the right to self-help repossession by objecting to the repossession.  *Seibel v. Society Lease, Inc.,* 969 F.Supp. 713, 718 (M.D. Fla. 1997) (citing *Quest*, 397 So.2d at 1023).  Entry after consent has been revoked is a breach of the peace. *Id.*  A breach of the peace can also occur if the secured party damages the property while affecting repossession. *Id*.

Courts have found that the mere presence of a law enforcement officer, who is "standing-by" or merely nods his agreement but does not participate in the repossession, can nevertheless invalidate the self-help repossession, making it unlawful. As reflected in the UCC Comments following § 679.609, some courts have held that where the repossess was accomplished with the assistance of a police officer, it was not a lawful "self-help repossession."  *See, e.g., In re MacLeod*, 118 B.R. 1, (Bkrtcy. D.N.H. 1990) (where debtor was told not to leave the house or "do something stupid" by state policeman present on "civil standby" at repossession, plaintiff did not consent and repossession was unlawful); *Waisner v. Jones*, 107 N.M. 260, 755 P.2d 598 (N.M. 1988).  The reasoning behind finding police-assisted repossessions to be unlawful is explained in *In re MacLeod*:

> In the *Walker* case the repossessor went with a uniformed police officer to the debtor's home and obtained verbal consent to take an automobile.  The police officer said and did nothing.  The creditor had the police officer there to prevent anticipated violence. The court concluded:

---

[4]Hull's lack of the appropriate credentials does not constitute a *per se* breach of the peace; moreover, his status and whether he served as an agent of the Smiths is a matter of factual dispute.

In the instant action we believe the presence of the deputy sheriff and its accompanying intimidation is the same kind of conduct condemned by the Washington court, supra.  The fact that the deputy did not say anything is not significant.  Nor is it required that the possessor (Walthall here) actually indicate resistance, either verbally or physically to the uniformed and armed officer.

Such a result, if left standing, would set a precedent by involving local law enforcement in self-help repossessions, and would create the very volatile situations the statute was designed to prevent. . . . We believe, therefore, that the introduction of law enforcement officers into the area of self-help repossession, regardless of their degree of participation or nonparticipation in the actual events, would constitute state action, thereby invalidating a repossession without proper notice and hearing. . . *Id.* at 865-66.

\* \* \*

If a creditor is allowed to unofficially use the powers of the state to squelch potential breaches of the peace, he can effectively evade or avoid the statute.  The statute makes it clear that a creditor runs the risk of serious liability if he proceeds with a self-help repossession when there is a serious objection by the debtor. If the strong arm of the law is needed, then the creditor must secure judicial intervention when a police officer is carrying out or sanctioning the repossession.

On that issue, *Stone Machinery Company v. Kessler,* 1 Wash. App. 750, 463 P.2d 651 (1970), is quite persuasive. There, the creditor secured the local sheriff in full regalia to assist in the repossession of a caterpillar tractor since the debtor was inclined toward violent defense of his property. The court held that where the officer was acting under color of office, without legal process, and the creditor thereby took possession of the collateral over debtor's objection, the creditor had committed trespass. *Id.* [463 P.2d] at 654. The court explained that the actions amounted to constructive force, intimidation, and oppression constituting a breach of the peace. Moreover, the creditor's actions completely circumvented the purpose and intent of the Code. *Id.* at 655.

The reasoning of these cases is persuasive.  In short, if a creditor can argue that they have avoided a breach of the peace by use of law enforcement personnel, and then contend they are in a position for self-help repossession, they effectively circumvent the intent of the statute which is to give the debtor a right to object without the presence of state action.

*In re MacLeod,* 118 B.R. at 2-3 (quoting *Walker v. Walthall*, 121 Ariz. 121, 588 P.2d 863 (App.1978);

*First and Farmers Bank of Somerset, Inc. v. Henderson*, 763 S.W.2d 137 (Ky. Ct. App.1988); *Stone*

*Mach. Co. v. Kessler*, 1 Wash. App. 750, 463 P.2d 651 (1970)).

However, at least one court has held that where the debtor is unaware that the law enforcement officer is even involved in the repossession, there is no breach of the peace. *See Wallace v. Chrysler Credit Corp.*, 743 F.Supp. 1228, 1234 (W.D. Va. 1990) (where off-duty deputy completed repossession before debtor was even aware of it, there was no breach of the peace); *cf. First and Farmers Bank of Somerset, Inc. v. Henderson*, 763 S.W.2d 137, 144 (Ky. App. 1988) (McDonald, J., dissenting) (having neutral officer stand by to prevent violence would not invalidate self-help repossession).

Woynar points to Hull's testimony confirming that he called the police around 10:30 p.m. and that he believed it was appropriate to ask the police for assistance on a self-help repossessions in certain neighborhoods; but he does not ask the police to help. Doc. No. 77, Hull Depo. at 76-77. Hull advised the police the night of January 17 that he was going to repossess the boat, that there might be a problem, and that he did not know if any of the people aboard had weapons. *Id.* at 97-99. Hull represented to the police dispatcher that Woynar was going to "get very violent" and the Daytona Beach Police dispatched Officer Alfano to stand by. Doc. No. 82-5.

Woynar concedes that "what happened during the actual repossession is a matter of varying testimony." Doc. No. 82. In fact, the testimony regarding the repossession is fraught with genuine issues of material fact. Woynar testified that although there was somebody with Ashley Hull, Woynar did not know who he was. Doc. No. 93-2 at 39. The man was dressed in all black jumpsuit with a gun belt and all kinds of cuffs and things hanging from it; he "would not produce identification or even tell me [Woynar]" who he was. Doc. No. 93-2 at 41. When Woynar was asked if he ever learned who the men were who came to repossess the boat, he answered: "I have some speculation. I understand there was some police, some rental cops, Ashley Hull. I don't think there was ever a

marshal.  That word was thrown around to very – a few people, but I don't think there was ever a marshal there . . . from what I learned in court."  Doc. No. 93-2 at 45-46.

Officer Alfano testified that his presence Woynar was not intimidated by his presence: "No, obviously not. . . [H]e felt free to say what he wanted and do what he wanted, so I don't think my presence hampered him one bit, no."  Alfano Dep. at 38.  Hull did not rush Woynar in collecting his things, yell at him, or raise his voice.  Dep. at 66. No one was forcibly removed from the boat or brandished any firearms; he saw nothing inappropriate on the part of Hull or Jack Smith.  Dep. at 62-64, 73.  Alfano also testified that Hull told Woynar he was there to repossess the boat, and Woynar asked if he could make a payment at that time or in the near future.  Dep. at 32.  "[I]t was let me make a payment, I believe is what he was saying."  Dep. at 37.  "The Way he conducted himself and the manner in which he initially engaged conversation.  It was no surprise that the boat was being repo'd."  Dep. at 37.  "The gentleman on the boat, it appeared to me he expected it and he didn't have any conflict that the gentleman – he didn't question his documents or question the fact that he had the power to seize the boat at the time."  Alfano Dep. at 50.

When the deposition testimony of Woynar is read in the light most favorable to the non-moving parties (the Smiths), Woynar was not aware whether Officer Alfano was a police officer.  Without the awareness that Officer Alfano was a police officer, there can be no "constructive breach of the peace" based simply on the police presence at the repossession.  *See Wallace v. Chrysler Credit Corp.*, 743 F.Supp. 1228, 1234 (W.D. Va. 1990) (where off-duty deputy completed repossession before debtor was even aware of it, there was not breach of the peace).  According the Officer Alfano's testimony, read in the light most favorable to the Smiths, Woynar was not subjected to

yelling, or forcible removal[5]; he asked if he could make a payment and when told no, he did not question Hull's authority to repossess the Vessel.  At the very least, there is a factual issue as to whether there was a constructive or actual breach of the peace and summary judgment on the issue is **DENIED**.  Woynar's claims for negligence and conversion[6] are derivative of the wrongful possession claim and summary judgment on those claims is also **DENIED**.

> *The Smiths' Motion for Summary Judgment on Default under the Preferred Ship Mortgage*

The Smiths move for summary judgment to foreclose a Preferred Ship Mortgage or preferred mortgage lien in default on the Vessel, and a declaration that their lien has priority over other liens and the judicial sale of the Vessel.  Doc. No. 85.  The Smiths contend that Woynar owes them $60,936.62 in principal, prejudgment interest of $12.52 per day, plus advances and expenditures under other provisions of the Mortgage, and late fees.  Doc. No. 85 at 3.  Woynar contends that there are disputed issues of fact as to whether payments were made after December 1, 2004, and neither Smith nor Woynar have complete records of payments on which a summary judgment could be based.  Doc. No. 91.  The Court agrees that there are disputed issues of fact precluding summary judgment.

Plaintiff Jack Smith attests that the purchase price for the Pegasus was $75,000, with $7,000 to be paid as labor by Woynar, $25,000 in cash, and the balance as a mortgage on the Vessel.  Doc. No. 85-2 at 2.  Woynar executed a Promissory Note for $43,000 on September 4, 2004, with payments of $510.42 to begin on October 1, 2004, later modified to December 2004.  *Id*. at 3-4. The Smiths received payments totaling $25,000 by September 8, 2004.  *Id*. at 3.  The labor for the $7,000 credit was to be performed by September 8, 2004; Woynar did not complete it until late October 2004.  *Id*.

---

[5]Read in the light most favorable to the Smiths, the only "removal" of Woynar came in connection with the search of the Vessel, after Hull had taken possession.  Woynar concedes that the testimony on consent to the repossession differed. Doc. No. 82 at 20.

[6]Hull's alleged failure to maintain the proper licenses (*see* Doc. No. 82 at 16) is not a *per se* breach of the peace and/or conversion, although it is a fact that will be considered on the merits at trial.

Woynar executed the Preferred Ship Mortgage securing the Note for $43,000 on November 13, 2004. *Id.* Smith sent Woynar a default letter dated February 15, 2005 demanding payment for the prior three months. *Id*. at 4. Similar default letters were sent each year to Woynar's permanent address in Connecticut. *Id*. Woynar has never responded to the letters with payments, protest or question. *Id*. The Smiths have incurred additional expenses related to the repossession of the boat and its seizure. *Id*.

In response, Woynar contends that he made periodic payments and told Smith that he was putting his money into the Vessel so he could put it into service, which Smith told him was okay. Woynar Aff., Doc. No. 91 at 10. Woynar did not receive any of the letters from Smith saying he was going to seize the Vessel. *Id*. Woynar attests that as of January 2008, he owed Smith no more than approximately $5,000. *Id*. He does not have the documentation of the payments because the documents were kept in a safe on the Vessel and when he returned to the Vessel after the repossession, the safe had been opened and all the documents had been removed. Doc. No. 91 at 11. There is a genuine issue of material fact as to whether Woynar received the default letters, responded to the Smiths, and/or provided payments. Moreover, Intervening Plaintiff Wheelbarger claims that he has added and/or placed equipment on the vessel for which he claims a lien and/or entitlement. Doc. No. 83. The Smiths' Motion for summary judgment to foreclosure the Preferred Ship Mortgage and declare the Smiths' lien to have priority is **DENIED.**

**DONE** and **ORDERED** in Orlando, Florida on November 18, 2008.

*David A. Baker*
_____
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record